UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

Eric Williams,                    :
          Plaintiff,              :
                                  :
          v.                      :   File No. 1:07-CV-149
                                  :
Fred Figueroa, Dwayne             :
Wright, Lisa Mears, Sandy         :
Glenn, Corrections               :
Corporation of America,           :
          Defendants.             :

MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION
(Paper 11)

Plaintiff Eric Williams, a Vermont inmate proceeding *pro se*, claims that the defendants have violated his constitutional right to marry.  The events alleged in the complaint all took place while Williams was incarcerated at a privately-owned facility in Oklahoma.  Defendant Corrections Corporation of America owns and operates the facility, and each of the individual defendants worked there.

The defendants now move to dismiss the case, both for lack of merit and because the case was filed in the wrong venue.  The motion is unopposed.  For reasons forth below, this case should have been initiated in Oklahoma.  I therefore recommend that the case be TRANSFERRED pursuant to 28 U.S.C. § 1406.

Factual Background

For purposes of the pending motion, the facts alleged in the complaint will be accepted as true.  In the fall of 2006, Williams and his long-time "significant other" decided to get married.  At the time, Williams was a Vermont inmate incarcerated out of state at the North Fork Correctional Facility ("NFCF") in Sayre, Oklahoma.  His fiancée lived in St. Albans, Vermont.

On November 29, 2006, Williams contacted the NFCF Chaplain, defendant Dwayne Wright, and asked how to proceed.  Chaplain Wright informed Williams that in order to obtain a marriage license in Oklahoma, both Williams and his fiancée would need to go to an Oklahoma courthouse.  Under Oklahoma law, however, out-of-state inmates are only allowed to leave a privately-owned prison facility for "legal or medical" reasons, and obtaining a marriage license reportedly did not qualify.  Therefore, according to Chaplain Wright, Williams would need to wait until he returned to Vermont to get married.

2

The law referenced in Chaplain Wright's response is found at 57 Okl. St. Ann. § 563.2(G).  The statute states, in relevant part:

> A private prison contractor housing federal inmates from jurisdictions other than Oklahoma . . . shall not allow any such inmate to leave the premises of the facility, except to comply with an order to appear in a court of competent jurisdiction, to receive medical care not available at the facility, to work [on a public works project], or to return or be transferred to another state . . . . .

57 Okl. St. Ann. § 563.2(G).  Oklahoma law also requires that "[p]ersons desiring to be married in this state shall submit an application in writing and sworn to in person before the clerk of the district court by both of the parties."  43 Okl. St. Ann. § 5.  Williams contends that, notwithstanding these statutory provisions, prison officials could have arranged either for an officer or agent of the Oklahoma court to come to NFCF, or for the Oklahoma court to write a transport order.  He submits that the failure to make such arrangements denied him his fundamental right to marry.

On December 18, 2006, Williams filed an informal grievance pursuant to NFCF's grievance policy.  The grievance alleged that "[t]he Chaplain is denying me the

3

right to get married.  This is a right guaranteed to me
by the State of Vermont and by Vermont D.O.C. Policy,
under whose authority I am in custody." (Paper 4-2 at
2).  On December 20, 2006, defendant Sandy Glenn, a
grievance officer at NFCF, assigned the grievance to
defendant Lisa Mears, an NFCF unit manager.  On December
22, 2006, Mears wrote that she would "talk to Warden and
Contract Monitor regarding this issue.  [Williams] feels
he has been told several different things regarding
policy."  Id. at 2.  That same day, Mears issued a
written "recommendation" stating that Williams would be
filing a formal grievance and appealing to the Warden.
If the matter was not resolved in his favor, Williams
would "file against VT."  Id. at 3.

On February 13, 2007, Williams filed a formal NFCF
grievance.  On February 16, 2007, grievance officer
Glenn issued a written report stating that, under
Oklahoma law, "inmates are not able to marry due to the
fact that both parties have to go to the Court house to
obtain a marriage license and our contract with VT does
not allow us to do this."  Under the section entitled
"Grievance Officer's Decision," Glenn wrote that the

4

grievance was denied "due to being against our policy."
Id. at 12.  In his complaint, Williams contends that the
contract between Corrections Corporation of America and
the State of Vermont does not specifically bar the
transport of Vermont inmates to a local courthouse.

Williams appealed Glenn's decision to the NFCF
Warden, defendant Fred Figueroa.  Figueroa denied the
appeal.  Williams received the Warden's opinion on April
2, 2007.  He did not file a grievance with the Vermont
Department of Corrections, and argues that the NFCF
grievance policy does not require him to do so.  (Paper
4-4 at 12).  He filed his complaint in this case on July
10, 2007.

## Discussion

The defendants have moved to dismiss the
complaint, both on the merits and for improper venue.
In Turner v. Safley, 482 U.S. 78, 96 (1987), the U.S.
Supreme Court found that inmates have a right to marry
that is constitutionally protected.  The Court
acknowledged, however, that "legitimate security
concerns may require placing reasonable restrictions
upon an inmate's right to marry, and may justify

5

approval of the superintendent." Turner, 482 U.S. at 97.  In this case, the defendants argue, *inter alia*, that the State of Oklahoma had a right to restrict Williams' ability to travel, and that the defendants acted appropriately when they declined to violate state law.  The defendants further contend that Williams should have filed a grievance with Vermont officials requesting a return to Vermont.

In addition to their merits arguments, the defendants submit that Williams filed his complaint in the wrong venue.  In general, a court may not reach the merits of the case prior to determining the proper venue.  See Joyner v. Reno, 466 F. Supp. 2d 31, 40 (D.D.C. 2006) (28 U.S.C. § 1406 "makes clear that a court has no discretion to reach the merits of a case in which venue is improper . . . ; the case must either be dismissed or transferred to a proper venue") (citations omitted).  Therefore, the Court should first assess the defendants' venue argument.

When a case is commenced in an improper venue, Section 1406(a) requires the court to either dismiss it or, "if it be in the interest of justice," transfer the

case to a district in which it could have been brought. 28 U.S.C. § 1406(a). "Whether dismissal or transfer is appropriate lies within the sound discretion of the district court." <u>Minnette v. Time Warner</u>, 997 F.2d 1023, 1026 (2d Cir. 1993). "On a Rule 12(b)(3) motion to dismiss based on improper venue, the burden of showing that venue in the forum is proper falls on the plaintiff." <u>Indymac Mortgage Holdings, Inc. v. Reyad</u>, 167 F. Supp. 2d 222, 237 (D. Conn. 2001).

In cases such as this involving questions of federal law, venue lies in

> (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought.

28 U.S.C. § 1391(b); <u>see also</u> <u>Amaker v. Haponik</u>, 198 F.R.D. 386, 391 (S.D.N.Y. 2000). Williams also claims diversity jurisdiction. In that event, the controlling statute is 28 U.S.C. § 1391(a), under which venue lies in

> (1) a judicial district where any defendant
> resides, if all defendants reside in the same
> State, (2) a judicial district in which a
> substantial part of the events or omissions
> giving rise to the claim occurred, or a
> substantial part of property that is the
> subject of the action is situated, or (3) a
> judicial district in which any defendant is
> subject to personal jurisdiction at the time
> the action is commenced, if there is no
> district in which the action may otherwise be
> brought.

28 U.S.C. § 1391(a).

Subsection (1) of either § 1391(a) or § 1391(b) does not apply here, since the defendants do not all reside in the same district.  According to the complaint, Corrections Corporation of America has a corporate headquarters in Nashville, Tennessee.  The remaining defendants worked, and presumably lived, in Oklahoma.

The next subsection of each statute determines venue based upon where "a substantial part of the events or omissions giving rise to the events occurred . . . ." 28 U.S.C. § 1391(a)(2), (b)(2).  The Second Circuit has instructed lower courts to "take seriously the adjective 'substantial'" in construing "the venue statute strictly."  Gulf Ins. Co. v. Glasbrenner, 417 F.3d 353, 356 (2d Cir. 2005).

It is plain from the allegations in the complaint that the principal events in this case took place at the correctional facility in Oklahoma.  Accordingly, venue is most appropriate in that state under subsection (2). See Lee v. Corrections Corp. of America, 2007 WL 4225405, at *2-*3 (D. Hawaii Nov. 26, 2007); Basargin v. Corrections Corp. of America, 2005 WL 2705002, at *2 (D. Alaska Oct. 17, 2005); Sadler v. Rowland, 2004 WL 2061127, at *5 (D. Conn. Sept. 13, 2004) (action brought by Connecticut prisoner against prison personnel in Virginia transferred to Virginia).  Because this action could have been brought in Oklahoma, subsection (3) of both §§ 1391(a) and (b) is inapplicable.  See Wright, Miller & Cooper, Federal Practice & Procedure: Jurisdiction 2d § 3802.1 n. 26 (Supp. 2003) (citing F.S. Photo, Inc. v. Picturevision, Inc., 48 F. Supp. 2d 442, 448 (D. Del. 1999)).

Having determined that venue is most appropriate in Oklahoma, the Court must decide whether the case should be dismissed, or whether the interests of justice call for a transfer.  "Courts enjoy considerable discretion in deciding whether to transfer a case in the

interest of justice." <u>Daniel v. American Bd. of Emergency Medicine</u>, 428 F.3d 408, 435 (2d Cir. 2005) (citation omitted).  In making this determination, consideration should be given to the ultimate goal of the "expeditious and orderly adjudication of cases and controversies on their merits." <u>Goldlawr, Inc. v. Heinman</u>, 369 U.S. 463, 466-67 (1962).

Williams commenced this action several months ago. Because of his *in forma pauperis* status, service has been initiated by the U.S. Marshals Service.  To dismiss the case and require re-filing in Oklahoma would result in unnecessary duplication of effort on the part of the government, additional effort for the plaintiff, added expense for the defendants, and unnecessary delay for all parties.  I therefore recommend that, in the interest of justice, this case be TRANSFERRED to Oklahoma.

<u>Conclusion</u>

For the reasons set forth above, I recommend that the defendants' motion (Paper 11) be GRANTED and that this case be TRANSFERRED to the United States District

Court for the Western District of Oklahoma pursuant to

28 U.S.C. § 1406.

      Dated at Burlington, in the District of Vermont,

this 9th day of June, 2008.


                              /s/ Jerome J. Niedermeier
                              Jerome J. Niedermeier
                              United States Magistrate Judge


Any party may object to this Report and Recommendation
within 10 days after service by filing with the clerk of
the court and serving on the magistrate judge and all
parties, written objections which shall specifically
identify the portions of the proposed findings,
recommendations or report to which objection is made and
the basis for such objections.  Failure to file
objections within the specified time waives the right to
appeal the District Court's order.  See Local Rules
72.1, 72.3, 73.1; 28 U.S.C. § 636(b)(1); Fed. R. Civ. P.
72(b), 6(a) and 6(e).